IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| AUDREY WARREN, | * |
| Plaintiff, | * |
| v. | * CASE NO: 8:20-cv-02460-PWG |
| WALMART, INC., | * |
| Defendant. | * |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Audrey Warren ("Warren"), by and through undersigned counsel, hereby submits the following memorandum in support of her Opposition to Defendant, Walmart, Inc.'s ("Walmart") Motion for Summary Judgment.

I. **Introduction**

Warren filed this lawsuit in the Circuit Court for Prince George's County, Maryland after sustaining injuries resulting from slipping and falling in the vestibule of the general merchandise entrance to Walmart in Laurel, Maryland. Walmart removed the case to this Court [ECF 1]. Following the close of discovery, Defendant filed a motion for summary disposition of the case, arguing there is no disputed evidence to support a triable issue of negligence or, alternatively, that Warren assumed the risk and was contributorily negligent, thereby barring her claim.

II. **Background**

On October 27, 2018, at approximately 2:59pm, 75 year old retiree, Warren, was driven by her husband to the Walmart in Laurel, Maryland to pick up some paper supplies. (Exhibit

1 to Defendant's Motion for Summary Judgment; hereinafter "Warren Dep." 12: 6-14, 15:5-7, 21:9-15; Plaintiff Exhibits A and B)[1]  It had rained all day and was drizzling lightly when Warren arrived at Walmart; you could not "see" rain blowing into the entrance. (Warren Dep. 23:1-7; 31:1-7)  Warren made sure to wear tennis shoes that had a rubber bottom with a grip. (Warren Dep. 25:17-20)  Her husband let her out at the entrance; and there were a lot of customers. (Warren Dep. 24:13-17)

Peak store hours are from 12:00pm to 6:00pm.  Not only maintenance associates, but also <u>all</u> other associates are instructed to pay particular attention to the front end in the event of inclement weather and make sure there are  "no slip opportunities" that could hurt a customer. (Emphasis supplied) (Exhibit 3 to Defendant's Motion, Deposition Transcript of Erik McCoy, Store Manager and Corporate Representative; hereinafter, "McCoy Dep." 103:20 – 104:11)  The front end supervisor, cart pushers and the maintenance associates would have responsibility over the vestibule areas. (McCoy Dep. 46:22 – 47:6; 103:4-10) There are three entrances to the Walmart in Laurel; and Warren used the general merchandise entrance. (Warren Dep. 26:21 - 27:4; McCoy Dep. 62:17-22; Plaintiff Exhibit B)  Business invitees must walk through two automatic doors to enter the interior store. (Exhibit 2 to Defendant's Motion, surveillance videos; Warren Dep. 26:21-27:4; Plaintiff Exhibit B)

The area between the first and second automatic doors is the vestibule, which was not well lit. (Warren Dep. 35:11-14)  There was a weather mat immediately inside the first entrance, which ran the length of the vestibule to the second entrance. The weather mats are approximately 8-10 feet in length.  (Plaintiff Exhibit A, Store video time stamp:

---

[1] Concurrent with the filing of this Opposition, Plaintiff has filed a Motion for Leave to File a CD with additional footage from Walmart's surveillance video, marked as "Plaintiff's Exhibit A";. (See, McCoy Dep. 67:19 – 25)

01:49:57(EDT); Plaintiff Exhibit B, p.1; McCoy Dep. 88:10-18)   The floors in the vestibule have a "nonslip" tile surface. (McCoy Dep. 97:12-13)  There were no yellow caution cones in the vestibule to alert invitees to potential weather related hazards. (McCoy Dep. 104:20-25; Defendant Exhibit 2 to Motion; Plaintiff Exhibits A and B)   The only yellow cone in the general merchandise area was inside the store out of view of the vestibule when the second automatic door was closed; and it was closed when Warren fell . (Plaintiff Exhibit B, p.2; Plaintiff Exhibit C)

      There were no visible wet spots or puddles of water in the vestibule area where Warren fell. (McCoy Dep. 17:4-7)  Warren stepped directly onto the weather mat and walked at a regular pace towards the second set of automatic doors.  (Plaintiff Exhibit A, Store video time stamp 02:59:18 (EDT))   As she walked to the second entrance, Warren looked to the right where the shopping carts were stored. (Plaintiff Exhibit A, Store video time stamp 02:59:20 (EDT))   Warren did not have an option to stay on the weather mat to retrieve a shopping cart. (Id.)  Warren had taken 7 steps on the weather mat and the moment she stepped off the mat onto the tile floor to retrieve a shopping cart, she slipped and fell and suffered  a concussion and neck sprain. (Plaintiff Exhibit A, Store video time stamp 02:59:18-20; Warren Dep. 61:11 - 62:4)  Warren noticed shine on the tile floor and intentionally stepped to avoid the shiny portion of the floor.  Upon stepping off the mat, Warren slipped and landed on her back. [Warren Dep. 31:21 -32:16; 33:20-34:22)  Two customers helped Warren get up and she immediately noted that her coat and clothes were wet and dirty. (Warren Dep. 33:9 -34:2)   Wet, hurting and dizzy, Warren was asked to complete a Customer Incident Report form.  She wrote, "There were wet spots on the floor, which got on my clothes once I had fallen." (Plaintiff Exhibit D; Warren Dep. 34:1-2)

From 1:49pm to 2:33pm, prior to Warren's arrival at the Store, a Customer Service Supervisor, dry mopped the vestibule, including both sides of the weather mat and the cart bay area, three (3) times at 1:50, 2:10, and 2:32.  And, at 2:17pm, the customer service supervisor used a wet mop to wipe the tile on the cart side -even enlisting the assistance of a cart pusher so she could mop the cart bay area. (Plaintiff Exhibit A, time stamp 01:50:13; 02:10:30; 02:17:42; and, 02:32:46; McCoy Dep. 40:23 – 41: 11; 71:2-13)  Both the dry and the wet mops were openly stored in the vestibule from 1:50pm through 3:41pm, and readily accessible for use by Walmart employees. (Exhibit 2 to Defendant's Motion).

Between 2:33pm to 2:59pm, before Warren's arrival, 140 people entered Walmart through the general merchandise entrance. The vestibule was not dry mopped during this time period. (Plaintiff Exhibit A, Store time stamp 02:33:50 to 2:59:18)

At 2:50pm and again at 2:52pm, respectively, Assistant Manager Muhammed Lorenzo and a cart pusher performed work-related duties in the vestibule where Warren slipped and fell. (Exhibit 2 to Defendant's Motion, video #2, Store time stamp 02:50:50 and 02:52:04; McCoy Dep. 47:23-25; 91:11-16; 93:16-17) Pictures taken after Warren's fall do not show "wet spots on the floor".   Instead, the pictures showed that dirt was tracked in from the outside.  (McCoy Dep. 16:24 – 17:7; 55:6-13)[2]

Walmart has a Standard Operating Procedure ("SOP") titled "Customer Incident Claims Process", accessible by supervisors, that directs them to "determine what was on the floor, where it came from and how long it was there" (Plaintiff Exhibit F; McCoy Dep. 25:5 – 26: 12, 29:14-21).  As related to Warren's fall, Walmart determined water from the rain was on the floor and video documented the length of time the water was on the floor.

---

[2] McCoy did not know when or by whom the photographs produced by Defendant in discovery were taken. (McCoy Dep. 48:24 – 50:25; 56:1-1-12; 59:5-22; and, 63:20 – 64:5)

Although not documented on the Incident Report, in its Answers to Plaintiff's Interrogatories in response to the request to describe the floor condition at the time of Warren's fall, Defendant attested there was a "small amount of liquid" on the floor that Walmart believed "to have been tracked in by customers from the rain outside." (Plaintiff Exhibit E; Plaintiff Exhibit G, Defendant's Answer to Interrogatory 19; McCoy Dep. 30:1-3; 31:1 – 32:17)

The SOP instructs supervisors to "look for safety cones in the area and document condition of spill, tracking, drying…etc.". (Plaintiff Exhibit F) Prior to falling, Warren did not see, nor does Walmart have video showing there was a caution cone in the vestibule to alert invitees of dangerous conditions caused by the rain. (Warren Dep. 40:1-22; McCoy Dep. 104:20-25)

The SOP directs the supervisor to do a 'touch test" of the floor for slickness. [Warren Exhibit F] Although the photos in the instant case did not show "wet spots", there is no documentation that a "touch test" of the floor was conducted for slickness. [McCoy Dep. 34:8-14]

In the event of inclement weather, maintenance associates are instructed to pay particular attention to front end; and cart pushers are responsible for mopping the vestibule when the floor is wet. (McCoy Dep. 87:13-24; 103:23 – 104:3) Walmart requires the vestibule to be dry mopped as needed and as water accumulates from wet shopping carts and customers. (McCoy Dep. 97:3-10) The cart pusher mopped the area where Warren slipped approximately three (3) minutes after she fell. (Exhibit 2 to Defendant's

Motion, time stamp: 03:07:41) [3]

Following Warren's fall, the vestibule was dry mopped six (6) times from 3:14pm to 3:41pm. (Exhibit 2 to Defendant's Motion, time stamp: 03:14:15 to 03:41:31)

**III.     Standard of Review**

In order to "survive" summary judgment, a plaintiff must identify specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Specifically, Plaintiff must present evidence to support facts upon which a reasonable trier of fact could rely in entering a verdict in her favor.  That is, facts that are capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Accord*, *Pence v. Norwest Bank Minn., N.A.*, 363 Md. 267,279 (2001). The court considering a motion for summary judgment may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, it must analyze the evidence presented in a light most favorable to Plaintiff with all justifiable inferences drawn in her favor.  *Id*.  If material facts are genuinely in dispute or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is not appropriate and should be denied.  *Anderson,* 477 U.S. at 251-52 (1986).  That is precisely the case here; and for the same reasons, the instant dispositive motion filed by Walmart should be denied.

**IV.     Argument**

    **A. THERE ARE GENUINE DISPUTED FACTS UPON WHICH A JURY COULD BASE A FINDING OF NEGLIGENCE**

To successfully assert a claim of negligence in Maryland, the plaintiff must prove that: (1) the defendant was under a duty to protect the plaintiff from injury, (2) the defendant breached

---

[3] Video #1 of Exhibit 2 to Defendantf's Motion records the time of Warren's slip and fall as 03:04:04 versus 02:59:18 recorded on video #2 of Defendant's Exhibit 2.

that duty, (3) the plaintiff suffered actual injury or loss, and (4) the injury or loss proximately resulted from the defendant's breach of the duty. *Schneider v. Ed's Marine Superstore, Inc*., 2015 U.S. Dist. LEXIS 93113 * 10 (Internal citation omitted).[4] In the instant case, Walmart challenges Warren's ability to meet the second element required to prove negligence. (Defendant Motion at 4). Indeed both the undisputed facts and the material facts in dispute underscore the fallacy of this contention.

    1. **<u>Walmart had notice of the hazardous condition</u>**

To prove that a business invitor breached its duty, the invitee must show "not only that a dangerous condition existed, but also that the proprietor 'had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee.'" *Rehn v. Westfield Am*., 153 Md. App. 586, 593 (2003) (citation omitted). The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers. *Tennant v. Walmart Warehouse Md. Corp*., 115 Md. App. 381, 388 (1997). Plaintiff does not have to present proof that the store owner had actual knowledge of the conditions creating the peril. *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 264 (2003). It is enough if it appears that the store owner could have discovered them by the exercise of ordinary care, so that, if it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them. *Id*. What constitutes sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons

---

[4] A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law. Here, because the events giving rise to Plaintiff's lawsuit occurred in Maryland, the substantive tort law of Maryland governs. *See, Booker v. Peterson Cos.,* 412 F. App'x 615, 616 (4th Cir. 2011).

likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions. *Maans v. Giant of Md., L.L.C*, 161 Md. App. 620, 629; *cert. denied*, 388 Md. 98 (2005)(internal citation omitted)

      Here, the record evidence would sufficiently enable a jury to determine how long the dangerous condition existed and that it existed long enough for Walmart to discover and correct it. In arguing to the contrary (Defendant Motion at 8), Walmart relies on two cases: *Richardson v. Nwadiuko*, 184 Md. App. 481 (2009) and *Ashby v. Faison & Assocs., Inc.*, 440 S.E. 2d 603 (1994). Both cases are distinguishable however, and, therefore, inapposite. In *Richardson* the Plaintiff slipped and fell upon stepping directly from outside into the tiled entrance of her doctor's office, which was not covered with a mat and was soaked with water from pouring rain. The doctor had seen patients without interruptions for the two hours immediately before plaintiff arrived and fell. In granting summary judgment in favor of the defendant, the Court noted Plaintiff was unable to present any evidence that defendant knew of the dangerous condition or that it had been there for an appreciable time before she was injured. (*Richardson*, 184 Md. App. at 497). Similarly, in *Ashby*, the plaintiff slipped and fell on the marble floor of a building lobby. It had been raining outside and upon entering the lobby at approximately 8:45am, plaintiff walked the length of the rain mat and after several steps on the marble floor, slipped and fell. *Ashby*, 440 S.E. 2d at 605. The lobby had been dry mopped by a porter at about 7:00am that morning, however, there was no defendant employee in the lobby at the time of plaintiff's fall. Upon motion following a jury verdict in plaintiff's favor, the trial court set aside the verdict and plaintiff appealed. In affirming the judgment of the trial court, the Virginia Supreme Court noted

there was no showing the defendants actually knew of the existence of a hazardous condition before Ashby fell or that the condition had existed long enough that the defendants should have known of its existence in time to remove it or to warn Ashby of the danger. (*Id*.) The Court opined there was no credible evidence to support the jury verdict and concluded the trial court did not err in setting aside the verdict.

In the instant case, Warren has presented sufficient evidence to go to the jury . The video footage from Walmart's surveillance cameras sets forth the relevant facts and timeline showing Walmart had constructive notice of (a) the water on the floor as a result of the rain; (b) that the wet condition was continuous and required ongoing treatment; and, (c) at least three missed opportunities to address the hazardous conditions. (Plaintiff's Exhibit A and Exhibit 2 to Defendant's Motion). First, the video footage establishes the following timeline:

| | |
|---|---|
| 1:50:13 to 1:50:50 | Walmart customer service supervisor dry mops cart area and full length of each side of weather mat.[5] |
| 1:52:00 | Cart pusher, dressed in rain gear, in vestibule moving carts. [6] |
| 2:10:30 to 2:11:58 | supervisor dry mops vestibule and length of weather mat. |
| 2:17:42 | supervisor uses a "wet" mop to wipe tile in cart bay area |
| 2:32:46 to 2:33:43 | supervisor dry mops vestibule cart and length of both sides of weather mat. |
| 2:33 to 2:59 | 140 customers enter vestibule leading to general merchandise section |
| 2:50 | Assistant Manager Muhammed Lorenzo places carts in cart bay |
| 2:52 | cart pusher organizes carts in cart bay area |

---

[5] Walmart's Corporate Representative, Erik McCoy, testified that the customer service supervisor usually wore a yellow vest and carried a radio. (McCoy Dep. 69:3 – 21; 71:6-13)
[6] Walmart's Corporate Representative identified the person responsible for returning carts to and overseeing the cart bay area as a cart pusher. (McCoy Dep. 72:25 – 73:10).

| | |
|---|---|
| 2:59:18 | Warren enters first automatic door into vestibule |
| 2:59:18 | Warren falls; there are no yellow hazard cones in vestibule |
| 3:03 | cart pusher, using a "wet" mop, mops in cart bay area |
| 3:14:25 to 3:15:19 | customer service associate dry mops vestibule |
| 3:16:25 to 3:17:10 | customer service associate dry mops vestibule |
| 3:29:00 to 3:30:35 | customer service associate dry mops vestibule |
| 3:36:13 to 3:37 | customer service associate dry mops vestibule |
| 3:39:59 to 3:40:27 | customer service associate dry mops vestibule |
| 3:41:04 to 3:41:31 | customer service associate dry mops vestibule |

(Plaintiff's Exhibit A, time-stamp 1:50 to 3:03, at times noted above; Exhibit 2 to Defendant's Motion, Video #2, time-stamp 3:04 to 3:41). From this evidence, a jury could determine that (a) before Warren fell, Walmart actually knew of the wet weather conditions on the floor based on the continuous dry and wet mopping of the vestibule by its associates; (b) according to the video footage, for 26 minutes before Warren's fall, Walmart associates failed to continue the dry/wet mopping in the vestibule; (c) within nine (9) minutes of Warren's slip and fall, an assistant manager and a cart pusher were in the vestibule area and although there were mops available and the wet condition were existent, neither employee addressed the floor condition; and (d) three (3) minutes after the occurrence, a cart pusher mopped the area where Warren slipped and fell.

In this case, the wet floor condition went unaddressed for 26 minutes before Warren fell and two associates went into the vestibule but did not address the "slip opportunities" as required. (McCoy Dep. 103:20 – 104:11). A jury could reasonably conclude based on this

10

evidence that (1) Walmart was on notice of the wet floor conditions attributable to the rain; and (2) for at least 1 hour before and 1 hour after Warren's slip and fall had addressed the wet floor condition by continuously mopping the vestibule in not less than seven (7) and not longer than twenty (20) minute intervals, making summary judgment inappropriate. *Daniel v. Moran Foods, LLC*, 2018 WL 3862232 at *3 (D. Md. August 2018). See, also, *Jones v. Wal-mart Stores, Inc.*, 2013 WL 1742136 *5 (D. Md. April 2013) (Actual knowledge of conditions creating the peril not necessary. It is enough if it appears that it could have discovered them by the exercise of ordinary care.)

2. **<u>Walmart should have anticipated that Warren, a business invitee, would not discover or realize the hazard</u>**.

Walmart argues its knowledge of the wet floor conditions were not superior to Warren's because the wet floor condition was open and obvious as a matter of law. (Defendant Motion at 8). Not so; and a jury could easily reach the opposite conclusion. A business owner has a duty to use "reasonable and ordinary care to keep the premises safe for invitees, and to protect them from unreasonable risks which an invitee, by exercising ordinary care for her own safety, will not discover." *Palmer v. Brown*, 2020 WL 1812865 *3 (D. Md April 2020) (Internal citation omitted) A business owner or occupier ordinarily has no duty to warn the invitee of open, obvious and patent dangers, however. *Id.* An open and obvious condition is one where the condition and risk are "recognizable to a person in the position of a visitor, exercising ordinary perception, intelligence, and judgment." *Id*. This includes the duty to look and see what is around the invitee. *Coleman v. United States*, 369 Fed. App'x 459, 462 (4th Cir. 2010).

The Maryland Court of Special Appeals opinion in *Six Flags America, L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569 (2020) is instructive in determining whether a triable issue exists.

11

In *Six Flags*, the Court affirmed the trial courts denial of Six Flags' motion for summary judgment. The issues before that appellate court included determining whether there were disputed material facts precluding a finding that the dangerous condition was open and obvious as a matter of law and upon which a jury could have reasonably determined that the danger was not open and obvious, thereby imposing upon Six Flags a duty to warn invitees or cure the condition. *Six Flags*. 248 Md. App. at 583. The plaintiff filed suit against Six Flags after her minor son slipped and fell while crossing a wet wooden pedestrian bridge. *Id.* At 574. Both parties presented evidence that the wet condition of the bridge was visible. The appellate court noted, however, that it did not necessarily follow that the slippery condition of the bridge was obvious; and it was reasonably conceivable that a visitor may have perceived the water on the wooden walkway without appreciating the danger created by the wet surface. *Id.* at 583. The Court opined, "[t]he jury may have believed that a visitor could have concluded that the bridge was unlikely to be slippery despite the wet condition." *Id.* Further, while acknowledging that it agreed with Six Flags' contention that the evidence overwhelmingly established that the bridge was openly and obviously wet, the Court disagreed that the dangerous condition caused by the wetness was so clearly open and obvious as to permit no reasonable factfinder to conclude otherwise. *Id.* at 583-584.

The case cited by Walmart in support of its "open and obvious" argument, *Newcomb v. Food Lion*, 94 F.3d 642 (Table) (1996 WL 469902) (4th Cir. August 20, 1996) is not analogous. There, the plaintiff admitted that she could see evidence of a hazardous condition immediately inside the entrance where she fell, i.e.dirty, wet footprints leading from the floor mat to the interior of the store. Importantly, the fact that patrons were shaking their umbrellas as they entered the store suggests it was actively raining; which was not the case here. (Id. at *1) In the

12

instant case, Warren acknowledged that visitors coming in and out of Walmart had tracked water in from the rain. (Warren Dep. 31:3-7)  She did not use or need an umbrella before entering the store. (Plaintiff's Exhibit A; Exhibit 2 to Defendant's Motion).  During her deposition, Warren stated she believed she saw water before she slipped and fell, and described the floor as "shiny like it was wet"; however, she did not walk on the shine or at least did not believe she did. (Warren Dep. 32:7-16)  When she got up from the floor, Warren stated her coat was wet and dirty. (Warren Dep.33:9-12).   In his deposition, Walmart's Corporate Representative testified there was no evidence showing wet spots or puddles of water; there was no evidence of wet footprints; and, the flooring in the vestibule was nonslip tile "so the water soaks up pretty quickly in it.". (McCoy Dep. 17:4-7; 55:9-17; 97:12-14)  There were no yellow caution cones in the vestibule or anything else that would have warned Warren of a specific slippery condition. (McCoy Dep. 104:20-25). Accordingly, consistent with the Court's ruling in *Six Flags*, the determination of whether the wet conditions caused by the rain constituted an open and obvious danger (i.e. slippery floors) should not be considered a question of law to be decided by this Court.  Instead, the material facts and reasonable inferences that could be drawn from them are such that a reasonable jury could conclude the wet floor conditions did not equate to an open and obvious slippery condition.

### 3. **A reasonable jury could find that Walmart failed to take reasonable steps to make the premises safe or give adequate warning of the hazardous condition.**

To support its contention that it took necessary precautions to address weather conditions at the time Warren slipped and fell, Walmart points to the following: (1) the store deployed wet weather mats on the floor and there were blower fans in the vestibule to help dry the area as well as carts during wet weather; (2) the store's inclement weather policies were clearly executed on that date; (3) there was a yellow wet floor caution conde inside the store; and, (4) an associate

dry mopped inside the vestibule "three times in the fifty minutes before Plaintiff's fall". (Defendant Motion at 10). Relying on this evidence, Walmart asserts it had no duty to continuously inspect the premises and thereby make it the insurer of Warren's safety, a duty Maryland courts have refused to impose upon store owners. (Defendant Motion at 10-11).

Indeed, there is record evidence that undermines Walmart's assertion it fulfilled its duties as a business invitor. Store Manager Erik McCoy acknowledged the only visible wet floor yellow caution cone was inside the store and visible only if the second automatic door from the vestibule was open (McCoy Dep. 99:10-18; Plaintiff Exhibit C). A Walmart associate mopped the vestibule area 4 times in 44 minutes (1:49 to 2:33); then the vestibule was not mopped for 26 minutes although an assistant manager and a cart pusher are seen working in the vestibule. It was during this latter timeframe that Warren entered the vestibule, slipped and fell (2:33 – 2:59). Thereafter, Walmart associates mopped the vestibule area 7 times in 34 minutes (3:07 to 3:41). (Plaintiff Exhibit A; Defendant's Exhibit 2 to Motion) McCoy was clear about the requirements for associates working during inclement weather:

> A. …when we have inclement weather there are assigned tasks that individual associates and teams will need to – they're assigned to do those tasks. So if it is rain, there are associates that are assigned.
>
> ***
>
> Q. Are associates required to know about the Mat Program?
>
> A. This is the store manager's responsibility to have good condition and available mats. And it's responsible for the front end team, which would be CSMs, which would be the AP host or customer host to lay them out. They would have this training. Nobody else would particularly have this training.
>
> Q. So when – CSM stands for what?

14

A. Customer service manager.

Q. Customer service?

A. Manager.

Q. And the front end team is comprised of whom?

A. Anyone from a cashier to a maintenance associate to a cart pusher and customer host.

***

Q. What, if any, policy is there for dry mopping to occur in the vestibule in the event of inclement weather?

A. Dry mopping needs to happen as needed, as it looks like that there may be water getting into the store or blowing in or coming off of a buggy or customers trying to get in, they would dry mop and the fans from above would help dry that area, and it's – this is a nonslip tile surface, so the water soaks up pretty quickly in it.

***

Q. And the front end supervisor would be one of the people who has responsibility over the vestibule areas, is that right?

A. Yes. They supervise the cart pusher, the maintenance associates, cashiers.

Q. How many maintenance associates work at the store?

A. So it ranges. So we normally run about 20 to 25 maintenance associates.

Q. And how many work at the store at any particular time?

15

A. At one time on the clock, normally somewhere around four, if it was in, say in the early morning hours. Peak hours would be anywhere from 12:00 to 6:00 and that would be five to six associates.

Q. And in the event of inclement weather, are the maintenance associates instructed to pay particular attention to the front end?

A. Yes, absolutely.

Q. Are all associates instructed to pay particular attention to the front end in the event of inclement weather?

A. In passing, every associate is assigned to – well, not assigned, by they are responsible to make sure that there is no slip opportunities, anything that can hurt an associate or customer.

(McCoy Dep. 42:2-7; 45:24 – 47:2; 97:3-14; 103:4 – 104:11). From this testimony, a jury could reasonably conclude that on the date in question, due to the rainy weather, **all** Walmart employees, and particularly the customer service manager, customer service host, cart pushers, and maintenance associates, were expected and required to pay special attention to the vestibule and actively watch for "slip opportunities"; and that responsibility was demonstrated through the continuous versus sporadic mopping. Further and regardless of Walmart's unwillingness to acknowledge it, a jury could reasonably conclude that Walmart imposed a higher duty upon itself to specifically monitor and maintain the front end of the store, to include the vestibule, to prevent slip "opportunities" and failed to meet that standard by allowing 140 customers to enter through the general service entrance during a 26-minutes time span without mopping the water that inevitably would be tracked in by that much foot traffic in such a short time span. (Plaintiff's Exhibit A, time stamp 2:33 to 2:59).

B. **THERE IS A GENUINE DISPUTE WHETHER WARREN ASSUMED THE RISK OR WAS CONTRIBUTORILY NEGLIGENT.**

As an alternative theory upon which to base summary disposition, Walmart argues the undisputed facts establish that Warren was contributorily negligent and/or assumed the risks that led to her injuries. (Defendant Motion at 12). Specifically, Walmart asserts Warren contributed to her alleged injuries by (a) "failing to pay due care and attention while walking on a known rainy day", and (b) "by failing to heed warnings provided by caution cones in the vicinity of the store entrance." (Plaintiff Exhibit G, Defendant's Answer to Interrogatory 17) Again, the record establishes there are material disputed facts that prohibit summary disposition based on these defenses.

Contributory negligence "is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Baltimore Gas and Elec. Co. v. Flippo*, 348 Md. 680, 703 (1998)(Internal quotation omitted) Generally, the issue of contributory negligence is for the jury as long as "there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom." *Id.* (citations omitted). Moreover, "[i]n order to establish contributory negligence as a matter of law, 'the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Id.*

Contrary to the contentions put forward by Walmart to support a finding of contributory negligence, the evidence is not plain that Warren did not look when she should have or see the "open and obvious" wet floor. Warren testified upon remembering she needed a cart, she noticed some wetness on the floor – "shiny like it was wet", and she made a conscious effort not

17

to walk on the "shine". (Warren Dep. 32:4-14). The Store Manager, McCoy, acknowledged there was no evidence of wet spots, wet footprints or puddles of water (McCoy Dep. 16:24 – 17:7; 55:6-17) And, there was no caution cone in the vestibule that Warren could have ignored in going over to the cart bay to retrieve a shopping cart. (McCoy Dep. 104 :20-25). A jury should be allowed to decide whether Warren's actions in wearing rubber bottomed shoes, stepping to avoid what she described as "shine", and the absence of any evidence of wet foot prints, wet spots or puddles of water warrant a finding that she contributed to the incident resulting in her injuries.

For the same reasons, a jury should decide whether Warren assumed any risk that bars recovery. Under Maryland law, "the doctrine of assumption of the risk will not be applied unless the undisputed evidence and all permissible inferences therefrom <u>clearly</u> establish that the risk of danger was <u>fully</u> known to and <u>understood</u> by the plaintiff." *Schroyer v. McNeal*, 323 Md. 275, 283 (1991)(quoting *Kasten Constr. Co. v. Evans*, 260 Md. 536, 544 (1971)) Defendant is unable to establish undisputed evidence to support this defense; and the cases it relies on all are distinguishable: (1) In *Schroyer*, the plaintiff was found to have assumed the risk resulting in a broken ankle by parking her car on snow and ice and walking on that same snow and ice to transport items from her car to her hotel room through the back entrance. *Shroyer*, 323 Md. at 278); (2) In *ADM P'ship v. Martin*, 348 Md. 84 (1997), the plaintiff – a delivery person – slipped and fell after walking on ice and an unplowed, snow covered walkway to make a delivery. The plaintiff slipped but did not fall going into the building, but slipped, fell and was injured traversing the same path on the way out; (3) In *Kelly v. McCarrick*, 155 Md. App. 82 (2004), the plaintiff was seriously injured during a fast pitch softball game. In *Kelly*, the Court reiterated that the defense of assumption of the risk rests upon showing an intentional and voluntary

exposure to a known danger and, thus, required a defendant to prove a plaintiff: (1) had knowledge of the risk of danger; (2) appreciated that risk and, (3) voluntarily exposed himself to it. *Id.* at 875. Regarding voluntary consent, the Court of Appeals has held that, in order for a plaintiff to assume voluntarily a risk of danger, there can be no restriction on the plaintiff's freedom of choice either by the existing circumstances or by coercion emanating from the defendant. See, also, *Sacks v. Pleasant*, 253 Md. 40, 46-47 (1969)(Tenant who fell off a broken toilet seat found to not have assumed the risk or negligently contributed to her injuries).

There is no undisputed evidence Warren appreciated there was a risk in stepping off the weather mat to retrieve a shopping cart. Walmart's argument that Warren assumed the risk because she wore tennis shoes and did not think she was walking on the "shine", are not dispositive of the issue. The fact Walmart did not identify evidence of wet spots, wet footprints or puddles of water; and the fact that based on the location of the shopping carts, Warren had no choice but to step off the weather mat to retrieve a cart constitute evidence that a jury should consider to determine whether Warren assumed the risk.

## V. Conclusion.

The record establishes there is a genuine dispute of material facts. The existence of evidence, not the value to be credited to it, warrants denial of Defendant's motion.


Dated: August 30, 2021					Respectfully submitted,


						/s/ Pamela L. Ashby
						Pamela L. Ashby (Bar No.: #13689)
						Jackson & Associates Law Firm, LLC
						1300 Caraway Court, Suite 100
						Upper Marlboro, Maryland 20774
						Tel.: (301) 883-0800

19

Facsimile: (301) 883-0801  
Email: pashby@jacksonassociateslawfirm.com  
Counsel *for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of August, 2021, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Memorandum of Points and Authorities In Support, Exhibits and proposed Order was mailed to Chambers pursuant to the Scheduling Order and filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system. The party may access this filing through the Court's system: Jennifer M. Alexander, Esquire and Kelly S. Kylis, Esquire, McNamee Hosea Jernigan Kim Greenan & Lynch, PA, 888 Bestgate Rd, Suite 402, Annapolis, MD 21401, Counsel for Defendant

_____/s/_____  
Pamela L. Ashby